## COMMONWEALTH *v.* ALDERMAN ZANTZINGER, ONE OF THE ALDERMEN OF THE CITY OF PHILADELPHIA.

[Charged on the oath of Edward Hooper with assault and battery.]

AFTER the testimony had closed, and the counsel had addressed the RECORDER—on the 2d September, 1844, he gave judgment as follows:

It appears from the testimony in this case, that on the 25th day of August, the prosecutor was proceeding down Locust street, from his employer's residence, to the place where he was engaged with his employer, as an apprentice to the bricklaying business; when opposite or within thirty feet from the office of alderman Zantzinger, he made a noise by putting his fingers in his mouth, called whistling, which interrupted and interfered with said alderman in the discharge of the duties of his office. As this sort of annoyance and obstruction of public justice, had been frequent near the office of the alderman, he started in pursuit of the offender, and found him in Locust near Eighth street, where he arrested him. The boy resisted, and part of the evidence of the commonwealth shows, that a blow with the hand was struck by the alderman at the boy, which hit him on the face or neck, (this the alderman positively denies, as physical ability prevented it.) The boy was conveyed to the office of alderman Binns and bound over for trial, for obstructing an officer of justice in the discharge of his duty. This is a brief but clear summary of the case of the commonwealth.

The defendant offered no evidence, but proved by the cross examination, that the noise made by the whistling might have been heard two squares. That the boy resisted the alderman, and was countenanced by his master, who was present, and who laid hold of the alderman, no citizens giving any aid to the officer of the law. The powers of justices, and constables, and peace officers, are as well defined as their duty is clear; but it seems of late that scepticism has covered the trunk and branches of law like a poisonous vine. Decisions of the supreme court of the commonwealth, the statutes, and the common law, are no longer of any weight against the doubts of the would-be-wise. It is as lamentable as true, that the officers of the law have but little respect shown them by many citizens. They are marks for the malice of the wicked, the revenge of the guilty, and the detraction of the evil-minded.

From various causes the effect has been produced, and it is now an onerous task for these officers of the government to execute their duties. If this be doubted, let the late outrages in Kensington and Southwark testify to the utter contempt shown for the officers of the law, who received only contumely, detraction, insults, injury and death, for their efforts to preserve the peace of the country, and the majesty of the law. It is thus, that the law is becoming powerless. Are its energies deadened by the enervation of the hands of her ministers? From small beginnings, this momentous end is arrived at. Instead of good citizens sustaining the magistracy, and upholding them in the exercise of their clear duty, by the well defined power of the law, they

12

stand neuter in the contest; and thus disorder is growing in our midst, until it will raise its head like a mountain billow; and after breaking down the front rank, the magistracy, which opposes feebly, it is true, its progress, it will overflow the foundations of society. I deem it my duty on this occasion to make these remarks. I feel their truth, and nothing but a conscientious belief that it is my duty to the people; the commonwealth, whose servant I am, to warn them against future dangers to their common welfare, and happiness, and security, and liberty, would ever have induced me to express them.

The duty of a peace officer is plain. It is to suppress disorder of all kinds under all circumstances, with or without a warrant,—without a warrant, if it is committed or threatened in his view—a citizen is a peace officer for this purpose. The keeper of the county prison is bound to receive a person arrested by a constable for a breach of the peace, without a commitment, and detain him till he can be heard before a justice. If a felony has been committed, an officer can arrest a suspected person without a warrant, though the felony was not perpetrated in his view. A justice or constable is bound to preserve the peace, with or without warrant; see appendix 7 Smith's Laws 727. A justice of the peace may authorize any citizen to execute a warrant of arrest in a *criminal* case. None but a constable of the place where it is to be executed, can be *compelled* to execute it; 1 Ashm. 183. A constable can arrest without warrant for a breach of the peace in his presence; 8 S. & R. 47; see also 6 Binn. 316. These are the duties of an officer of the law, either justice or consta-

ble. Such an officer can call on and demand of any citizen aid, and punish for a refusal to comply—and if any person so arrested, shall proceed against such officer in the civil courts, the facts, if proved to be such as would amount to a binding over for trial, would cause any reasonable jury to find for the officer, unless some malice or unprecedented impropriety was committed by him. Under these powers, and bounden by this duty, alderman Zantzinger arrested Hooper—he had the right so to do. The boy is bound over for trial by alderman Binns, an alderman of the city, after hearing the facts which alderman Zantzinger charged against him. If under this state of the facts, I was to decide on the propriety of the official action of alderman Binns, it would be establishing a precedent fruitful of great abuses, it would be a new species of habeas corpus—as at present administered, the most abused of all the legal rights of the citizen—it would be to say that the moment a man was arrested for any charge and bound over, that he might go before another justice and charge an assault and battery against the officer arresting him. Serious evils would result from such proceeding, one of which would be materially to obstruct the course of justice. The decision of the magistrate before whom the first charge would be made, is binding, till after trial—binding, to show the charge against the prisoner; and to ask another magistrate to review such a decision by raising a collateral question or issue, would create a conflict in the administration of the law, opposed to the end and objects of its enactment.

There is another view of this subject which is worthy of consideration. Justices and officers are by duty and

by law enjoined to do certain things, to hear complaints, issue process, and arrest offenders. To this end the law gives them powers, well defined powers, and plenary authority. Now if an officer, in the discharge of a duty, to refuse to do which, renders him punishable by the very same law, uses only the power and authority with which he is clothed for the purpose, can he be guilty of a criminal offence? The duty of an officer is to arrest offenders—if they refuse to be arrested, and resist, the officer must compel them to submit, and it is my opinion that it is the officer's duty to carry that force, if required, to the taking of life, and such taking of life is, and would be, justifiable. Now it would be unreasonable in the law to compel an officer to arrest, and in using the force necessary, necessary and legal, to effect the arrest, to subject him to trial for an assault and battery. Under such circumstances, there can be no assault and battery on the part of the officer, unless the most flagrant and gross abuse of his authority existed, and in such case if there be any doubt as to the abuse, that doubt should be given in favour of the officer. These are my views, and I shall so decide, until the supreme court otherwise rule the law. I know it is thought that by deciding cases such as the present, in favour of the citizen and against the officer, that popularity is gained with the people; but he who so thinks, or so acts, who has such an object in view on such occasions, is both legally and morally perjured. It has been this sort of popularity-hunting by magisterial acts, that has brought the magistracy into impotence and almost contempt. So much of the present case as has been adjudicated by alderman Binns, has been regarded by him

as proper for the action of a jury.  I shall so regard it.  It is a case of the breach of the peace, and indeed a higher misdemeanor, obstructing an officer in the discharge of his duties; the mere whistling was of no importance, the effect was produced, no matter what were the means.

The arrest of the offender, from the facts before me is not, and cannot be, an assault and battery; the party may have redress in the civil court, but not by indictment for a criminal offence.  The boy might whistle to the end of time, and be never obnoxious to punishment, but when he does that, or any other act, however trivial or unimportant, with an evil design, then the intention lends importance to the act, and it becomes more or less serious in proportion to the intent, and its mode of expression.  Alderman Binns, by the binding over, has established the evil design of the act of Hooper, and it has thus become important, if it be important, so much so as to be a criminal offence; then his arrest was necessary and legal, and having resisted that arrest, the alderman was bound to use sufficient force to compel him to submit to the law; so he did under the law, and by its power, and by its authority.  He has, therefore, committed no offence.  He is discharged.

Counsel for commonwealth, *D. P. Brown, esq.*
For the defendant, *Judge Barton.*